UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ILLUMINEX DIAMONDS CORP.

                      Plaintiff,

      - against –

VERONICA CHOU and EVGENY KLYUCHAREV,

                      Defendants.

**ORDER**

18 Civ. 1751 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Illuminex Diamonds Corp. ("Illuminex") – a "high-end diamond and other jewels dealer operating in New York, New York" – brings this action for fraud and fraudulent inducement against Defendants Veronica Chou and Evgeny Klyucharev, a married couple residing in London. (Cmplt. (Dkt. No. 1) ¶¶ 13-14, 17)[1]

        Illuminex purchased from a non-party an expensive diamond that once belonged to Defendant Chou. Illuminex later returned the diamond to Chou pursuant to a settlement agreement. The settlement agreement was premised on Chou's representations that the diamond had been stolen from her. (Id. ¶¶ 31, 35)

        In this action, Plaintiff asserts that Chou's representations were false, and seeks to recover the amount it paid for the diamond, lost profits, and other damages, fees, and costs. (Id. ¶ 11) Chou has moved to dismiss.[2] (Mot. (Dkt. No. 18-4)) For the reasons stated below, Chou's motion will be denied.

---

[1] Unless otherwise indicated, all citations are to the docket in the instant case.
[2] Defendant Klyucharev has not appeared in this action.

**BACKGROUND**

I.  **THE ALLEGED THEFT OF THE DIAMOND
    AND CHOU'S LAWSUIT AGAINST ILLUMINEX**

On April 2, 2016, Defendant Chou reported that her engagement ring – a 6.29 carat diamond (the "Diamond") that Klyucharev had purchased in October 2011 for $222,000 – had been stolen.  (Cmplt., Ex. C (Chou Aff.) (Dkt. No. 1-3) ¶ 6; Cmplt., Ex. B (Chou Cmplt.) (Dkt. No. 1-2) ¶¶ 3-4)  Chou "immediately notified the authorities in London," and maintained that the thief "must have been one of the employees working at [her] home."  (Cmplt., Ex. C (Chou Aff.) Dkt. No. 1-3) ¶ 4)

On March 10, 2016 – several weeks before Chou reported that the Diamond had been stolen – Defendants' chauffeur, Irfan Zayee, sold the Diamond to Jewelry Cave Ltd. (Cmplt. (Dkt. No. 1) ¶ 21)  Over the next month, the Diamond was sold three more times, culminating in Plaintiff's April 11, 2016 purchase of the Diamond from Nader Kash International, for $144,141.64.[3]  (Id. ¶¶ 18-21)  Illuminex paid fair market value for the Diamond, and maintains that "every merchant who purchased the Diamond was a bona fide purchaser who bought and sold good title to the Diamond."  (Id. ¶¶ 3, 22)

Zayee was charged in London with stealing the Diamond,[4] however, and on August 2, 2016, Chou filed a lawsuit against Illuminex in Supreme Court of the State of New York, New York County, (the "Chou Action"), seeking a declaration that Chou is the Diamond's

---

[3] Although the Complaint alleges that Illuminex purchased the Diamond on April 11, 2016, the settlement agreement between Chou and Illuminex (the "Settlement Agreement") states that Illuminez purchased the Diamond on April 16, 2016.  (See Cmplt., Ex. A (Settlement Agreement) (Dkt. No. 1-1) at 2)

[4] The record does not reveal when Zayee was charged.

2

rightful owner, and an order directing Illuminex to transfer the Diamond to Chou.[5]  (Id. ¶ 24; id., Ex. B (Chou Cmplt.) (Dkt. No. 1-2) at 5)

After the Chou complaint was filed, Illuminex "acted in good faith and evaluated Ms. Chou's claims . . . relying on the statements made by [Chou and Klyucharev] and their attorney, Diana Rubinov. . . ."  (Cmplt. (Dkt. No. 1) ¶ 4)  Chou and Klyucharev "adamantly maintained that the Diamond was stolen from Ms. Chou and was rightfully her lawful property."  (Id. ¶ 6)

The Chou complaint states that "[o]n or about April 2, 2016, the Diamond was stolen from [Chou], at her place of residen[ce]," and that she notified local authorities of the theft.  (Id., Ex. B (Chou Cmplt.) (Dkt. No. 1-2) ¶¶ 6-7)  In an affidavit that Chou submitted in support of an order to show cause seeking the return of the Diamond, Chou "unequivocally swore" that the Diamond had been stolen and that the thief had been employed in her home. (Cmplt. (Dkt. No. 1) ¶¶ 26, 28; id., Ex. C (Chou Aff.) (Dkt. No. 1-3) ¶ 4)  "[A]s a result of Ms. Chou's claim that the Diamond was stolen from her[,] and her sworn affidavit," Illuminex and Chou "entered into [a] Settlement Agreement, whereby Illuminex agreed to return the Diamond to Ms. Chou in exchange for a small monetary sum, substantially less than the price Illuminex paid to acquire the Diamond."  (Cmplt. (Dkt. No. 1) ¶¶ 30-31)

## II.     THE SETTLEMENT AGREEMENT

The Settlement Agreement – executed on November 1, 2016 – provides that "Chou shall pay to Illuminex the sum of $55,000 . . . and Illuminex shall deliver the Diamond to Chou."  (Id., Ex. A (Settlement Agreement) (Dkt. No. 1-1) at 2)

---

[5]  The Chou Action was removed to this District on September 2, 2016.  (See Chou v. Illuminex Diamonds Corp., No. 16 Civ. 6909 (RA), Notice of Removal (Dkt. No. 1))

The Settlement Agreement contains a release, which includes the following language:

> Other than the obligations of the Parties under this Agreement, . . . the Parties hereby covenant not to sue and hereby fully and forever release and discharge each and every one of the Parties . . . from any and all actions, causes of action, suits, . . . and demands whatsoever (based upon any legal theory . . . ), whether known or unknown, arising out of, or by reason of, or related to any act, omission, transaction, practice, conduct or occurrence whatsoever, from the beginning of time up to and including the time of execution of this Agreement relating to the Diamond and the [Chou action]. . . .

(Id. at 3). As to "the Parties' duties and obligations under [the Settlement] Agreement," "the parties each reserve the right to enforce [those duties and obligations]." (Id. at 4; Cmplt. (Dkt. No. 1) ¶ 8)

In accordance with the terms of the Settlement Agreement, Illuminex returned the Diamond to Chou on November 3, 2016. (Cmplt. (Dkt. No. 1) ¶ 35)

### III.  THE INSTANT LAWSUIT

On November 5, 2017 – about a year after the parties' execution of the Settlement Agreement – all criminal charges against Zayee were dropped. Zayee told law enforcement authorities in London that Defendant Klyucharev had given the Diamond to him "to sell on his behalf to 'raise quick cash'" to fund Klyucharev's "drug and prostitute escapades." (Id. ¶¶ 10, 37)

Illuminex further alleges that Chou was "well aware of" these escapades. Indeed, "[i]n court, Mr. Klyucharev told a judge it was 'normal in his circles' to use £5000-a-night prostitutes and his wife . . . knew about it." (Id. ¶ 37; id., Ex. D (Daily Mail Article) (Dkt. No. 1-4) at 2) Illuminex contends that "since the Diamond was not stolen, but rather given to Zayee by the Defendants with both of their consent," Chou's representations – which induced Illuminex to enter into the Settlement Agreement – were false. (Cmplt. (Dkt. No. 1) ¶ 42)

4

Illuminex initiated this action on February 26, 2018, alleging that Defendants "committed fraud . . . by falsely representing that the Diamond was stolen from Ms. Chou," and asserting claims for fraud and fraudulent inducement. (Id. ¶¶ 47-83)  Defendant Chou has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. (Dkt. No. 18-4); Def. Br. (Dkt. No. 21))

## DISCUSSION

I.     **LEGAL STANDARDS**

     A.     **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A court considering a Rule 12(b)(6) motion can disregard allegations that "are no more than conclusions[, however, because conclusory allegations] are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678 (quoting Twombly, 550 U.S. at 557), offers "'a formulaic recitation of the elements of a cause of action,'" id. (quoting Twombly, 550 U.S. at 555), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock &

5

Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

    **B.**    **Rule 9(b) Standard**

"Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened standard, "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner, 459 F.3d at 290 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). While Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks and citation omitted). "'The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner, 459 F.3d at 290-91 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)).

**II.**    **ANALYSIS**

Chou contends that the Settlement Agreement precludes Illuminex's lawsuit: "Plaintiff's claim that the parties' settlement agreement . . . must be set aside on the basis of fraud must fail because it is nothing more than speculation. . . . To allow the settlement

agreement to be set aside under these circumstances would be tantamount to denying the Defendants wholesale access to the courts and would have a chilling effect on the integrity of the litigation process." (Def. Br. (Dkt. No. 21) at 5)

Although Chou does not explicitly state that Illuminex's allegations are not sufficient to plead fraud or fraudulent inducement, that appears to be the nub of her motion to dismiss. (See id. at 10 ("Even if accepted as true, the hearsay tabloid article does not demonstrate anything more than that Chou declined to cooperate in the criminal prosecution of Zayee because Zayee blackmailed her with scandalous accusations. . . ."); Def. Reply Br. (Dkt. No. 22) at 4 ("A party seeking to void a release must put into the record at least 'some evidence' showing there has been fraud. A tabloid article is not competent evidence that Chou knew the diamond was not stolen or that she intended to defraud Plaintiff." (internal citation omitted)))[6]

### A. Effect of the Settlement Agreement

"While it is well settled that a general release ordinarily bars even claims of which the releasor was unaware when the release was executed, the rule is inapplicable in cases of fraud. . . ." DIMON Inc. v. Folium, Inc., 48 F.Supp.2d 359, 368 (S.D.N.Y.1999) (internal citations omitted). "Under New York law, a release or waiver clause may be attacked and set aside, even if it is clear on its face, for substantive flaws in its execution, such as fraud in the

---

[6] Attached to the Complaint is a November 2017 Daily Mail article describing the criminal case in London against Zayee for the theft of the Diamond. (Cmplt., Ex. D (Daily Mail article) (Dkt. No. 1-4)) According to the article, Zayee claimed that he had sold the Diamond on behalf of Klyucharev, who needed "quick cash" to pay for drugs and prostitutes. Zayee referenced "130 pages of phone messages demonstrating how Mr. Klyucharev would ask [Zayee] to order sex workers." When summoned to court, Klyucharev confirmed that these text messages were genuine and, according to the judge in the case, "suggest[ed that] it is normal in his circles to have relationships with other women." Klucharev and Chou subsequently "dropped [their] theft claim" against Zayee and "abandoned the case." (Id. at 2-5)

inducement, illegality, duress, or mutual mistake."[7] <u>Joint Venture Asset Acquisition v. Zellner</u>, 808 F. Supp. 289, 302 (S.D.N.Y. 1992) (collecting cases); <u>see also</u> <u>Mangini v. McClurg</u>, 24 N.Y.2d 556, 566-67 (1969) ("Fraud . . . ha[s] long been a ground for setting aside a release" (citation omitted)); <u>Hallock v. State of N.Y.</u>, 64 N.Y.2d 224, 230 (1984) ("Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." (citations omitted)). Accordingly, the Settlement Agreement will not preclude Illuminex's lawsuit, if it has adequately pled allegations that make out fraud or fraudulent inducement under Rule 9(b).

      **B.**      <u>**Whether the Complaint States a Claim for Fraud**</u>

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." <u>Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC</u>, 783 F.3d 395, 402 (2d Cir. 2015) (citation omitted). "A misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person considering whether to enter the transaction." <u>Moore v. PaineWebber, Inc.</u>, 189 F.3d 165, 170 (2d Cir. 1999) (citation omitted).

Here, the Complaint pleads allegations that satisfy these elements. As to the first element, the Complaint alleges that Chou falsely represented to Illuminex that the Diamond was stolen from her. (Cmplt (Dkt. No. 1) ¶¶ 3, 6, 28, 48) This misrepresentation would be

---

[7] In the Settlement Agreement, the parties agreed that "[t]he interpretation of this Agreement, including . . . any and all claims for breach or enforcement hereof, shall be governed by, and construed in accordance with, the laws of the State of New York." (Cmplt., Ex. A (Settlement Agreement) (Dkt. No. 1-1) at 4)

8

significant to a reasonable party considering whether to enter into the Settlement Agreement. As the Complaint alleges, "[t]he only basis for Ms. Chou's recovery of the Diamond [in the Chou action] was bad title to the [Diamond]"; without charging that the Diamond had been stolen, "Illuminex would have had good title to the Diamond and there would have been no valid claim [in the Chou action] . . . ."  (Id. ¶ 40)

As to the second and third elements, the Complaint alleges that Chou knew that the Diamond had not been stolen, but falsely swore that it had been stolen, in order to regain possession of the Diamond at a fraction of its value.  (Id. ¶¶ 50, 52, 70, 77-78)  As to reliance, the Complaint alleges that Illuminex only entered into the Settlement Agreement "as a result of Chou's claim that the Diamond was stolen from her[,] and [as a result of] her sworn affidavit" attesting to the same.  (Id. ¶ 31)  Finally, the Complaint alleges that Illuminex was injured as a result of Chou's misrepresentations:  Plaintiff "incurred economic damages, including," inter alia, "the original purchase price of the Diamond, [and] lost profits from the anticipated sale of the Diamond."  (Id. ¶¶ 46, 57-58)

In sum, the Complaint's allegations are sufficient to state a claim for fraud under New York law.

C. **Whether the Complaint States a Claim for Fraudulent Inducement**

To state a claim for fraudulent inducement under New York law, a plaintiff must allege "'(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.'"  Duckett v. Williams, 86 F. Supp. 3d 268, 274 (S.D.N.Y. 2015) (quoting Computerized Radiological Servs. v. Syntex Corp., 786 F.2d 72, 76

(2d Cir. 1986)). "In assessing whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004). "'Ordinarily there is no duty to exercise due diligence, and [courts] have described the necessity of showing care as minimal diligence or negating its own recklessness.'" Id. (quoting Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides, 106 F.3d 22, 26-27 (2d Cir. 1997) (internal quotation marks omitted)).

The Court concludes that the Complaint's allegations are sufficient to allege the elements of fraudulent inducement. The first four elements – that the defendant made a false representation of material fact, knowing the representation was false – are satisfied for the same reasons discussed above in connection with Plaintiff's fraud claim. As to the fifth element – that the representation was made for the purpose of inducing Plaintiff to rely on it – Plaintiff alleges that Chou "knowingly made false statements . . . in regards to the theft of the Diamond to induce the Plaintiff to enter into the Settlement Agreement," and that she and her husband "intended for their statements . . . to be relied upon by Plaintiff in the negotiations for the Settlement Agreement." (Cmplt. (Dkt. No. 1) ¶¶ 73, 76) As to the sixth and seventh elements, the Complaint repeatedly asserts that Plaintiff relied on the alleged misrepresentations, not knowing that they were false. (See id. ¶ 57 ("Had the Defendants[] not made these fraudulent assertions . . . regarding the theft of the Diamond, Plaintiff would not have entered into the Settlement Agreement . . . ."); see also id. ¶¶ 4, 55, 75, 77), and nothing in the Complaint or Defendant's opposition suggests that Plaintiff acted recklessly or failed to exercise "minimal diligence" in

10

relying on the misrepresentations.[8]  Finally, as with the fraud claim, the Complaint adequately alleges that Plaintiff suffered injury.

The Court concludes that the Complaint adequately states a claim for fraudulent inducement under New York law.

### D. Whether the Complaint Satisfies Rule 9(b)'s Heightened Pleading Standard

To the extent Chou contends that the Complaint does not meet Rule 9(b)'s heightened pleading standard, her arguments are not persuasive.  As the allegations discussed

---

[8]  The Second Circuit has described two scenarios in which plaintiff must show more than "minimal diligence":  first, "where the victim of fraud had hints of [the representation's] falsity" – i.e., "where the '[c]ircumstances [are] so suspicious as to suggest to a reasonably prudent plaintiff that the defendants' representations may be false'" – and, second, where "sophisticated business entities" are "'engaged in major transactions [and] enjoy access to critical information but fail to take advantage of that access.'"  Winnick, 350 F. Supp. 2d at 406 (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)).  Nothing in the Complaint or in the briefing suggests any "hints of falsity."  Chou argues, however, that "Plaintiff is a sophisticated party that was represented by counsel in the negotiation, drafting, and execution of the Settlement Agreement," and "had every opportunity to investigate Chou's claims prior to entering into the Settlement Agreement."  (Def. Br. (Dkt. No. 21) at 10).

Assuming arguendo that Plaintiff qualifies as a "sophisticated business entity" and that the Settlement Agreement constitutes a "major transaction," Chou does not point to any "critical information" that Illuminex had access to, but which it "fail[ed] to take advantage of."  See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1542 (2d Cir. 1997) ("[A]ll of the[] cases [invoking the sophisticated business entity standard] involved situations in which the relevant facts were easily accessible to the relying party." (emphasis in original)); cf. Schlaifer Nance & Co., 119 F.3d at 101 (Where plaintiff "had full and complete notice of significant problems with the [defendant's] promise of exclusive ownership of all of Warhol's assets," although the defendant "lied to [plaintiff] about . . . one particular aspect of Warhol's collection of assets, [plaintiff] could not reasonably rely on this misrepresentation when [it] was fully aware that there were serious problems regarding the entire Estate – notice that would have led any reasonably diligent attorney or corporate officer to investigate the serious questions that arose during negotiation of the [a]greement.").  In any event, "the issue of whether the plaintiff['s] reliance was reasonable is a factual question inappropriate for resolution in a motion to dismiss." Maloul v. Berkowitz, No. 07 CIV. 8525 (LBS), 2008 WL 2876532, at *4 (S.D.N.Y. July 23, 2008); Doehla v. Wathne Ltd., Inc., No. 98 CIV. 6087 CSH, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999) ("Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." (citations omitted)).

11

above demonstrate, the Complaint "specif[ies] the statements that the plaintiff contends were fraudulent" and "identif[ies] the speaker" (the representations that the Diamond was stolen, made by Defendant Chou); "state[s] where and when the statements were made" (in the August 2, 2016 complaint in the Chou Action, and in Chou's August 10, 2016 affidavit submitted in support of the order to show cause in the Chou Action, (Cmplt. (Dkt. No. 1) ¶¶ 23, 28); id., Exs. B-C (Dkt. Nos. 1-2, 1-3))); and "explain[s] why the statements were fraudulent" (because the Diamond was not stolen, but was instead entrusted to Zayee to sell by Defendant Klyucharev, with Defendant Chou's knowledge, (id. ¶¶ 10, 42, 70).  Lerner, 459 F.3d at 290 (internal quotation marks and citation omitted).  Moreover, the Complaint alleges "facts to show that [Chou] had both motive and opportunity to commit fraud," id. at 290-91 (internal quotation marks and citation omitted) – namely, that Chou sought to regain possession of the Diamond, and that the lawsuit against Illuminex gave her the opportunity to do so – thereby satisfying the requirement that Plaintiff "allege facts that give rise to a strong inference of fraudulent intent," Loreley, 797 F.3d at 171 (internal quotation marks and citation omitted).

In sum, the Complaint's allegations plead fraud with particularity, thus satisfying Fed. R. Civ. P 9(b).

\*          \*          \*          \*

Because the Complaint adequately pleads fraud and fraudulent inducement, the Settlement Agreement does not preclude this action.

## CONCLUSION

For the reasons stated above, Defendant Chou's motion to dismiss is denied.  The Clerk of Court is directed to terminate the motion.  (Dkt. No. 18)

An initial pre-trial conference will take place on **February 10, 2022 at 10:00 a.m.**  The parties are directed to dial 888-363-4749 to participate, and to enter the access code

6212642.  The press and public may obtain access to the telephone conference by dialing the same number and using the same access code.  The Court is holding multiple telephone conferences on this date.  The parties should call in at the scheduled time and wait on the line for their case to be called.  At that time, the Court will un-mute the parties' lines.  **Seven days before the conference**, the parties must email Michael_Ruocco@nysd.uscourts.gov and GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that the parties will be using to dial into the conference so that the Court knows which numbers to un-mute.  The email should include the case name and case number in the subject line.

Seven days before the conference, the parties must submit a joint letter addressing the following in separate paragraphs:  (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; and (3) the prospect for settlement.  For the Court's convenience, the parties must set forth the conference's date and time in the joint letter's opening paragraph.  The Court directs the parties to consult its Individual Practices and model Case Management Plan and Scheduling Order – both of which are available on the Court's web site – and to submit with their joint letter a jointly proposed Case Management Plan.

Dated:  New York, New York
January 24, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge